# EXHIBIT 1

# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER: CV-2026-07-3143

JENNA SHULTZ
4257 North Gilwood Drive
Stow, OH, 44224

-VS- **SUMMONS**

STRYKER EMPLOYMENT COMPANY, LLC
4400 Easton Commons Way
Suite 125
Columbus, OH 43219

**TO the following:**

STRYKER EMPLOYMENT COMPANY, LLC
4400 Easton Commons Way
Suite 125
Columbus, OH 43219

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto. The name and address of the Plaintiff's attorney is:

JULIAN MEYER
8401 Chagrin Road
Suite 8
Chagrin Falls, OH 44023

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service. Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Tavia Galonski
Summit County Clerk of Courts

July 23, 2026

**IN THE COURT OF COMMON PLEAS**
**SUMMIT COUNTY, OHIO**

JENNA SHULTZ
4257 North Gilwood Drive
Stow, OH 44224

Plaintiff,

v.

STRYKER EMPLOYMENT COMPANY, LLC
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, OH 43219

Defendant.

**COMPLAINT FOR PREGNANCY DISCRIMINATION, DISABILITY DISCRIMINATION, RETALIATION, AND NEGLIGENT TRAINING, RETENTION & SUPERVISION**

**JURY DEMAND ENDORSED HEREON**

Plaintiff Jenna Shultz ("Plaintiff") alleges as follows for her Complaint against Defendant Stryker Employment Company, LLC ("Defendant"):

1. Defendant is a foreign limited liability company, doing business in Summit County, Ohio.

2. This Court has subject matter and personal jurisdiction over the claims raised in this Complaint.

3. Venue is proper in Summit County, Ohio.

4. Plaintiff has suffered damages in excess of $25,000.

5. Plaintiff has exhausted her administrative remedies by filing a charge of discrimination and receiving a Right to Sue Letter.

6. Plaintiff has hired the undersigned counsel and has agreed to pay them reasonable attorney's fees and costs if they are successful on one or more of the claims set forth herein.

7. Defendant is an employer engaged in an industry affecting commerce within the meaning of the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg(2)(b) and Ohio Revised Code § 4112.01(A)(2).

8. At all relevant times, Defendant has continuously employed more than fifteen employees.

9. Defendant employed Erin Croley ("Croley") as Senior Manager/HR Business Partner.

10. Croley supervised Plaintiff.

11. Defendant employed Bradlie Van Belle ("Van Belle") as Lead Employee Relations Specialist.

12. Van Belle supervised Plaintiff.

13. Defendant employed Savannah Florian ("Florian") as Associate Manager of Employee Relations.

14. Florian supervised Plaintiff.

15. Defendant employed Kevin Hopkins ("Hopkins") as Manager.

16. Hopkins supervised Plaintiff.

17. Defendant employed Tim Gallagher ("Gallagher") as Team Lead.

18. Gallagher supervised Plaintiff.

19. Cleveland Clinic Akron General Hospital ("Akron General") employed Edward Beard ("Beard") as Orthopedic Lead Manager.

20. Akron General employed Megan Moore ("Moore").

21. Upon information and belief, Beard supervised Moore.

22. Akron General employed Amanda.

23. Upon information and belief, Beard supervised Amanda.

24. Defendant employed Plaintiff as an Orthopedic Surgical Specialist from at least September 1, 2020 until December 1, 2025.

25. Plaintiff worked for Defendant as one of two Orthopedic Surgical Specialists in the "Cleveland South" territory.

26. The second Orthopedic Surgical Specialist in the "Cleveland South" territory was similarly-situated to Plaintiff in all relevant aspects, except that the second Orthopedic Surgical Specialist was not pregnant or disabled.

27. As of 2025, the "Cleveland South" territory consisted of the following clients: (a) Akron General, (b) Akron Surgical Associates, (c) Summa Barberton, (d) Western Reserve Hospital, (e) UH Portage, (f) Southwest General, and (g) UH Parma.

28. Among clients within the "Cleveland South" territory in 2025, only Akron General and Akron Surgical Associates were part of the Cleveland Clinic network of hospitals.

29. Over 70% of clients whom Plaintiff served within the "Cleveland South" territory had no connection to the Cleveland Clinic network of hospitals.

30. Plaintiff was qualified for her job as an Orthopedic Surgical Specialist.

31. The essential functions of Plaintiff's job included, but were not limited to, administrative work, preparing instruments for surgeries, assisting with implants, and assisting with the operation of instruments during surgeries.

32. In 2020, Defendant ranked Plaintiff as a Valued Performer in her annual performance review.

33. In 2021, Defendant ranked Plaintiff as a Valued Performer in her annual performance review and showered Plaintiff with praise, gushing, "Thank you for your efforts in helping the reps reach quota."

34. In 2022, Defendant ranked Plaintiff as a Valued Performer in her annual performance review and showered Plaintiff with praise, gushing, "Great teamwork this year," and Plaintiff "has developed good work relationships with customers."

35. In 2023, Defendant ranked Plaintiff as a Valued Performer in her annual performance review and showered Plaintiff with praise, gushing, "We both agreed that your performance rating this year was 'Valued Performance.' Valued Performers are our core and deliver solid results."

36. In 2024, Defendant ranked Plaintiff as a Valued Performer in her annual performance review and showered Plaintiff with praise, gushing, "Thank you for prioritizing patient care every day," and "Thank you for being agile, accountable and inclusive with Cleveland South."

37. On May 24, 2025, Plaintiff learned that she was pregnant.

38. The expected due date for the birth of Plaintiff's child was February 7, 2026.

39. Plaintiff also developed physical limitations related to her pregnancy and became disabled.

40. Plaintiff's physical limitations related to her pregnancy and disabilities substantially limited one or more of her major life activities, including but not limited to her ability to lift and bend.



Tavia Galonski, Summit County Clerk of Courts

41. Plaintiff could perform the essential functions of her job with or without a reasonable accommodation for the physical limitations related to her pregnancy and disabilities.

42. Defendant was aware of Plaintiff's physical limitations related to her pregnancy and disabilities.

43. Plaintiff has a record of impairments.

44. Defendant regarded Plaintiff as having impairments.

45. Plaintiff's job duties as an Orthopedic Surgical Specialist occasionally exposed her to bone cement monomer. Breathing particles of bone cement monomer risked jeopardizing Plaintiff's pregnancy and exacerbating her disability symptoms. For these reasons, Plaintiff broadly announced her pregnancy and disabilities to the doctors and staff employed by "Cleveland South" clients, including Akron General, and to her supervisors and coworkers employed by Defendant.

46. In May 2025, Plaintiff discussed separately with both Hopkins and Gallagher being separated from bone cement monomer and taking time off work for the birth of her child pursuant to Defendant's maternity leave policy as reasonable accommodations for the known physical limitations related to her pregnancy and disabilities.

47. On October 22, 2025 at approximately 9am, Plaintiff was preparing a surgical cart in the "pack room" at Akron General.

48. Moore and Amanda were present with Plaintiff in "pack room."

49. Because Plaintiff was nearly six months pregnant on October 22, 2025 and disabled, bending and lifting items in the "pack room" to locate sterilized trays for the cart

triggered Plaintiff's known physical limitations related to her pregnancy and her disability symptoms.

50. Plaintiff disclosed the physical limitations related to her pregnancy and disabilities to Moore and Amanda and asked for their assistance to locate sterilized trays.

51. Moore and Amanda both expressed frustration with Plaintiff's request to assist her while pregnant and disabled. For example, Moore refused to help Plaintiff at all. Amanda begrudgingly helped Plaintiff but only after Plaintiff had already endured tremendous pain trying to locate sterilized trays on her own.

52. Other than speaking assertively to Moore and Amanda due to their frustration with helping Plaintiff during her pregnancy and while disabled, Plaintiff did not engage in any physical conflict with either of them, nor could Plaintiff engage in any physical conflict with two able-bodied non-pregnant women while Plaintiff was nearly six months pregnant, disabled, and could hardly bend or lift without excruciating pain.

53. On October 22, 2025 at approximately 10am, Plaintiff complained to Beard about Moore's and Amanda's frustration with assisting Plaintiff in the "pack room" while Plaintiff was pregnant, disabled, and suffered known physical limitations related to her pregnancy.

54. Beard promised that he would investigate Moore and Amanda.

55. On October 27, 2025, Beard texted a photograph of a handwritten note to Plaintiff. Beard texted Plaintiff that, "Apparently since someone reported that it's now above what we can do. I will let you know if we can figure anything out." The handwritten note that Beard included with his text read, "Jenna Stryker [sic] rep slamming hands on trays demanding

[sic] why trays arent [sic] on carts pushed [sic] cart into computer almost [sic] ran over one of the workers."

56. Upon information and belief, during Beard's investigation of Moore and Amanda, either one of them or both made the absurdly false accusation about Plaintiff contained in the handwritten note.

57. No reasonable person could plausibly believe that Plaintiff, a long-tenured employee of Defendant with a discipline-free record and consistent annual performance rankings as a Valued Performer, would seriously attempt to engage in a physical conflict with two able-bodied non-pregnant women while Plaintiff was outnumbered by them two-to-one, nearly six-months pregnant, disabled, and suffered known physical limitations related to her pregnancy that rendered such a physical conflict utterly impossible for Plaintiff.

58. On October 27, 2025 at 8:22am, Plaintiff texted Hopkins: "Kevin i [sic] got a text from [Beard] ortho manager about what he heard so i [sic] can share that with you. I am absolutely beside myself."

59. On October 27, 2025 at approximately 11am, Plaintiff complained to Hopkins about Moore's and Amanda's frustration with assisting Plaintiff in the "pack room" while Plaintiff was pregnant, disabled, and suffered known physical limitations related to her pregnancy. Plaintiff also complained about the absurdly false statement contained in the handwritten note that Beard had shared with Plaintiff.

60. Plaintiff requested from Hopkins to provide Plaintiff with assistance if an assignment included bending or lifting as a reasonable accommodation for the known physical limitations related to Plaintiff's pregnancy and her disabilities.

61. Hopkins knew or should have known that the absurd accusation against Plaintiff in the handwritten note was false and implausible for Hopkins or any reasonable person to believe since Plaintiff was consistently ranked as a Valued Performer, Plaintiff was a long-tenured employee, Plaintiff had no prior discipline, and Plaintiff was nearly six months pregnant, disabled, with known physical limitations related to her pregnancy that would render any purported physical conflict between Plaintiff and two able-bodied non-pregnant women utterly impossible for Plaintiff.

62. Hopkins failed to engage in an interactive process or to provide any reasonable accommodation for the known physical limitations related to Plaintiff's pregnancy and her disabilities.

63. On November 10, 2025, Plaintiff met virtually with Van Belle and Florian on Microsoft Teams. During this meeting, Plaintiff complained to Van Belle and Florian about Moore's and Amanda's frustration with assisting Plaintiff in the "pack room" while Plaintiff was pregnant, disabled, and suffered known physical limitations related to her pregnancy. Plaintiff also complained about the absurdly false statement contained in the handwritten note that Beard had shared with Plaintiff.

64. Plaintiff requested from Van Belle and Florian to provide Plaintiff with assistance if an assignment included bending or lifting as a reasonable accommodation for the known physical limitations related to Plaintiff's pregnancy and her disabilities.

65. Van Belle knew or should have known that the absurd accusation against Plaintiff in the handwritten note was false and implausible for Van Belle or any reasonable person to believe since Plaintiff was consistently ranked as a Valued Performer, Plaintiff was a long-tenured employee, Plaintiff had no prior discipline, and Plaintiff was nearly six months

pregnant, disabled, with known physical limitations related to her pregnancy that would render any purported physical conflict between Plaintiff and two able-bodied non-pregnant women utterly impossible for Plaintiff.

66. Van Belle failed to engage in an interactive process or to provide any reasonable accommodation for the known physical limitations related to Plaintiff's pregnancy and disabilities.

67. Florian knew or should have known that the absurd accusation against Plaintiff in the handwritten note was false and implausible for Florian or any reasonable person to believe since Plaintiff was consistently ranked as a Valued Performer, Plaintiff was a long-tenured employee, Plaintiff had no prior discipline, and Plaintiff was nearly six months pregnant, disabled, with known physical limitations related to her pregnancy that would render any purported physical conflict between Plaintiff and two able-bodied non-pregnant women utterly impossible for Plaintiff.

68. Florian failed to engage in an interactive process or to provide any reasonable accommodation for the known physical limitations related to Plaintiff's pregnancy and disabilities.

69. On November 25, 2025 at a Winking Lizard restaurant in Fairlawn, Ohio, Gallagher announced on behalf of Defendant that beginning in January 2026, the Cleveland Clinic network of hospitals, including Akron General and Akron Surgical Associates, would no longer be part of the "Cleveland South" territory.

70. On December 1, 2025 at 1:30pm, Plaintiff met virtually with Croley and Hopkins on Microsoft Teams. During this meeting, Croley and Hopkins communicated to Plaintiff that Defendant's internal investigation concluded that Plaintiff had not violated any

policies or engaged in the purported behavior described in the handwritten note. Despite this conclusion, Croley and Hopkins also communicated Defendant's decision to terminate Plaintiff's employment purportedly because the Cleveland Clinic network of hospitals had revoked Plaintiff's access.

71. Defendant's purported reason for terminating Plaintiff was a mere pretext.

72. Even if, *arguendo*, Cleveland Clinic had revoked Plaintiff's access, Plaintiff asked Croley and Hopkins to explain the contradiction between the purported reason for the termination decision and Defendant's announcement that the "Cleveland South" territory would no longer include Cleveland Clinic hospitals beginning January 2026.

73. Croley and Hopkins could not explain the contradiction to Plaintiff or the relevance of Cleveland Clinic allegedly revoking Plaintiff's access when Defendant's restructuring of the "Cleveland South" territory would no longer include the Cleveland Clinic network of hospitals, beginning only weeks after Plaintiff's termination date (and only weeks before Plaintiff's expected due date for the birth of her child and start of her maternity leave).

74. The real reasons why Defendant terminated Plaintiff's employment were because (a) Plaintiff was pregnant, (b) Plaintiff was disabled, (c) Plaintiff suffered known physical limitations related to her pregnancy, (d) Plaintiff had requested reasonable accommodations for the known physical limitations related to her pregnancy and disabilities, (e) Plaintiff had complained multiple times about pregnancy and disability discrimination, and (f) Plaintiff was entitled to take time off work for the birth of her child pursuant to Defendant's maternity leave policy beginning February 2026, which Defendant knew would overlap with the restructuring of the "Cleveland South" territory that consequently excluded the Cleveland Clinic network of hospitals.

75. Upon information and belief, Defendant ceased relations with the Cleveland Clinic network of hospitals in the "Cleveland South" territory beginning in January 2026, including Akron General and Akron Surgical Associates.

76. Upon information and belief, Defendant did not terminate the second similarly-situated but non-pregnant and non-disabled Orthopedic Surgical Specialist in the "Cleveland South" territory.

77. On February 4, 2026, Plaintiff gave birth to her child Jackson Prochnow.

**COUNT I**
**PREGNANCY DISCRIMINATION**
**(Pursuant to the Pregnant Workers Fairness Act)**

78. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 77 above.

79. In violation of the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg et seq., Defendant failed reasonably accommodate Plaintiff's known limitations related to her pregnancy, childbirth, or related medical conditions.

80. Plaintiff was a qualified employee under the PWFA because she could perform the essential functions of her position with or without a reasonable accommodation.

81. Alternatively, to the extent Plaintiff could not perform an essential function of her position, that inability was for a temporary period, the essential function could be performed in the near future, and the inability to perform the essential function could be reasonably accommodated.

82. Plaintiff had known limitations related to her pregnancy and childbirth, including but not limited to high blood pressure, swelling, and joint pain, and the need for maternity leave.

83. Plaintiff informed Defendant of her known limitations and requested reasonable accommodations—specifically, not to work near bone cement monomer, for assistance when an assignment included bending or lifting, and maternity leave for the birth of Plaintiff's child.

84. Defendant denied Plaintiff's requests for reasonable accommodations and failed to engage Plaintiff in an interactive process.

85. Defendant instead terminated Plaintiff's employment based a pretext.

86. Plaintiff's requests not to work near bone cement monomer, for assistance when an assignment included bending or lifting, and for maternity leave for the birth of Plaintiff's child would not have caused an undue hardship to Defendant.

87. Plaintiff has been damaged by Defendant's violations of the PWFA.

88. Defendant's conduct is the cause of Plaintiff's damages.

89. Defendant acted with malice, entitling Plaintiff to punitive damages and attorney's fees and costs.

90. Plaintiff is also entitled to statutory attorney's fees and costs, pursuant to the PWFA.

**COUNT II**
**PREGNANCY DISCRIMINATION**
**(Pursuant to Title VII of the Civil Rights Act of 1964)**

91. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 90 above.

92. In violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), and Ohio Revised Code § 4112.02, Defendant discriminated against Plaintiff because of her pregnancy.

93. Plaintiff was a member of a protected class because she was pregnant.

94. Defendant was aware of Plaintiff's pregnancy.

95. Defendant treated Plaintiff less favorably than similarly-situated but non-pregnant employees.

96. Plaintiff has been damaged by Defendant's sex pregnancy discrimination.

97. Defendant's conduct is the cause of Plaintiff's damages.

98. Defendant acted with malice, entitling Plaintiff to punitive damages and attorney's fees and costs.

99. Plaintiff is also entitled to statutory attorney's fees and costs, pursuant to Title VII of the Civil Rights Act of 1964.

**COUNT III**
**DISABILITY DISCRIMINATION**
**(Pursuant to the Americans with Disabilities Act)**

100. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 99 above.

101. In violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, Defendant discriminated against Plaintiff because of her disabilities.

102. Plaintiff was disabled during her employment with Defendant. Her disabilities substantially limited one or more of her major life activities, including but not limited to her ability to lift and bend.

103. Defendant was aware of Plaintiff's disabilities.

104. Plaintiff has a record of disabilities.

105. Defendant regarded Plaintiff as disabled.

106. Plaintiff was qualified for her job as an Orthopedic Surgical Specialist with or without a reasonable accommodation.

107. Plaintiff requested reasonable accommodations for her disabilities, including separation from bone cement monomer, assistance if an assignment required lifting

or bending, and a definite leave of absence pursuant to Defendant's maternity leave policy beginning in February 2026.

108. Defendant denied Plaintiff's requests for a reasonable accommodation and failed to engage Plaintiff in an interactive process.

109. Plaintiff suffered an adverse employment action when Defendant refused to reasonably accommodate Plaintiff and terminated her employment.

110. Plaintiff has been damaged by Defendant's disability discrimination.

111. Defendant's conduct is the cause of Plaintiff's damages.

112. Defendants acted with malice, entitling Plaintiff to punitive damages and attorney's fees and costs.

113. Plaintiff is also entitled to statutory attorney's fees and costs, pursuant to the Americans with Disabilities Act.

**COUNT IV**
**DISABILITY DISCRIMINATION**
**(Pursuant to the Ohio Civil Rights Act)**

114. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 113 above.

115. In violation of Ohio Revised Code § 4112.02, Defendant discriminated against Plaintiff because of her disabilities.

116. Plaintiff was disabled during her employment with Defendant. Her disabilities substantially limited one or more of her major life activities, including but not limited to her ability to lift and bend.

117. Defendant was aware of Plaintiff's disabilities.

118. Plaintiff has a record of disabilities.

119. Defendant regarded Plaintiff as disabled.

120. Plaintiff was qualified for her job as an Orthopedic Surgical Specialist with or without a reasonable accommodation.

121. Plaintiff requested reasonable accommodations for her disabilities, including separation from bone cement monomer, assistance if an assignment required lifting or bending, and a definite leave of absence pursuant to Defendant's maternity leave policy beginning in February 2026.

122. Defendant denied Plaintiff's requests for a reasonable accommodation and failed to engage Plaintiff in an interactive process.

123. Plaintiff suffered an adverse employment action when Defendant refused to reasonably accommodate Plaintiff and terminated her employment.

124. Plaintiff has been damaged by Defendant's disability discrimination.

125. Defendant's conduct is the cause of Plaintiff's damages.

126. Defendants acted with malice, entitling Plaintiff to punitive damages and attorney's fees and costs.

**COUNT V**
**RETALIATION**

127. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 126 above.

128. In violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a); the PWFA, 42 U.S.C. § 2000gg-2(f); the ADA, 42 U.S.C. § 12203; and Ohio Revised Code § 4112.02(I), Defendant retaliated against Plaintiff.

129. Plaintiff engaged in protected activity by requesting reasonable accommodations for known limitations related to her pregnancy and her disabilities and by opposing Defendant's unlawful discrimination.

130. Defendant knew that Plaintiff was engaging in protected activity.

131. Defendant engaged in an adverse employment action by terminating Plaintiff's employment.

132. There is a direct, causal connection between Plaintiff's protected activity and Defendant's adverse employment action.

133. Plaintiff has been damaged by Defendant's retaliation.

134. Defendant's conduct is the cause of Plaintiff's damages.

135. Defendant acted with malice, entitling Plaintiff to punitive damages and attorney's fees and costs.

136. Plaintiff is also entitled to statutory attorney's fees and costs, pursuant to Title VII of the Civil Rights Act of 1964 and the PWFA.

**COUNT VI**
**NEGLIGENT TRAINING, RETENTION & SUPERVISION**

137. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 136 above.

138. Croley, Van Belle, Florian, and Hopkins were employees of Defendant.

139. Croley, Van Belle, Florian, and Hopkins acted incompetently by discriminating against Plaintiff because of her pregnancy and disabilities, refusing to engage Plaintiff in an interactive process, denying Plaintiff's reasonable accommodation requests, and retaliating against Plaintiff.

140. Defendant had actual or constructive knowledge of this incompetent behavior because Plaintiff repeatedly requested reasonable accommodations and complained about pregnancy and disability discrimination multiple times.

141. Defendant had a duty to use due care in training, retaining, and supervising Croley, Van Belle, Florian, and Hopkins.

142. Defendant breached its duty to use due care in training, retaining, and supervising Croley, Van Belle, Florian, and Hopkins.

143. Plaintiff was damaged by Defendant's failure to use due care.

144. Defendant's conduct is the cause of Plaintiff's damages.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's lost wages, front pay, lost fringe benefits, non-economic damages such as emotional pain, suffering, inconvenience, physical anguish, and loss of enjoyment of life, any other compensatory damages, punitive damages, prejudgment interest at the statutory rate, post-judgment interest, attorney's fees and costs, and all other relief to which she is entitled.

JURY TRIAL DEMANDED.

Respectfully submitted,

/s/ Brad Levine
Brad Levine, Esq. (0090286)
Julian K. Meyer, Esq. (0104320)
Voudris Law LLC
8401 Chagrin Road, Suite 8
Chagrin Falls, OH 44023
blevine@voudrislaw.com
jmeyer@voudrislaw.com
440-543-0672
440-543-0721 (fax)
*Counsel for Plaintiff*

**Summit County Court of Common Pleas**
**Civil Division**

**Instructions:** Complete the following form and file with the Summit County Clerk of Courts - Civil Division, located at: 205 South High Street, 1st Floor, Akron, Ohio 44308.

**Case Caption:**

Jenna Shultz
Plaintiff

v.

Case Number ______________________

Stryker Employment Company, LL
Defendant

**INSTRUCTIONS FOR SERVICE**

**To Clerk**: You are hereby requested to make service upon the following by:

- [ ] FedEx
- [x] Certified Mail
- [ ] Regular Mail – Certificate of Mailing
- [ ] Sheriff Service (Personal)
- [ ] Sheriff Service (Personal or Residential)
- [ ] Personal Service (Process Server): ______
- [ ] Waiver of Service requested under Civil Rule 4.7

**Please Serve the following pleadings:** Complaint and Summons

**Parties to be served:**

| | |
|---|---|
| Name: Stryker Employment Company LLC | Name: |
| Address 4400 Easton Commons Way | Address |
| Address Suite 125 | Address |
| City Columbus State OH Zip 43219 | City State Zip |
| Name: | Name: |
| Address | Address |
| Address | Address |
| City State Zip | City State Zip |

s/ [signature]
by:

0104320
Supreme Ct #

*Tavia Galonski, Summit County Clerk of Courts*